USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: _9/30/20_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | |
|---|---|
| SERGIO LOVATIO, RUDI LOVATI, ALESSANDRA SARAGO LOVATI, AND ALESSANDRA LOVATI<br><br>                              Plaintiffs,<br><br>             -against-<br><br><br><br><br>PETRÓLEOS DE VENEZUELA, S.A.,<br>                              Defendant. | 1:19-cv-4799 (ALC)<br><br>**OPINION AND ORDER** |

------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs Sergio Lovati, Rudi Lovati, Alessandra Sarago Lovati, and Alessandra Lovati commenced this breach of contract action against Defendant Petróleos de Venezuela, S.A. ("PDVSA"), seeking recovery for interest payments allegedly due under notes issued to them by PDVSA pursuant to an Indenture dated November 17, 2011. PDVSA now moves to dismiss Plaintiffs' Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6), or alternatively, to stay the action for 120 days because of the political climate in Venezuela. For the reasons that follow, this motion is DENIED in its entirety.

## BACKGROUND

### I. Factual and Procedural Background

"PDVSA is a capital stock corporation organized under the laws of the Bolivarian Republic of Venezuela (the "Republic"), [and] majority owned by the Republic." (Compl. ¶ 6).

1

PDVSA is "an Agency or Instrumentality of a Foreign State, as defined in 28 U.S.C. § 1603." (*Id.*)

On November 17, 2011, PDVSA entered into an Indenture. (Compl. Ex. A or Indenture). The aggregate principal amount of the Notes delivered under the Indenture on its issue date was $2,394,239,600. (*Id.* § 2.01(b)). Each note bears a 9% interest rate per annum and the principal is due in three installments on November 17, 2019, November 17, 2020, and November 17, 2021, the maturity date. (*Id.* §§ 1.01, 2.08(b)).

Plaintiffs are all owners of notes issued under the Indenture. Together, the principal amount of Plaintiffs' notes is $55,455,000. (Compl. ¶¶ 11a, 12a, 13a, 14a).

On May 23, 2019, Plaintiffs collectively filed this action for breach of contract on their notes. (Compl.). On October 30, 2019, PDVSA moved to dismiss Plaintiffs' complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6), or alternatively, to stay the action for 120 days because of the political climate in Venezuela. (ECF No. 25).

## II. Relevant Provisions of the Indenture and Notes

Before discussing the arguments for dismissal, it is helpful to lay out the provisions of the Indenture and the notes that the parties' disputes are based upon.

If certain conditions are met, in the event of a default, the Indenture provides for acceleration of principal and interest. The required conditions are as follows:

> The Holders of at least 25% in principal amount of Outstanding Notes may declare the principal of, and premium, if any, accrued interest, and Additional Amounts, if any, on all the Notes to be due and payable by notice in writing to the Issuer and the Trustee specifying the Event of Default and that it is a "notice of acceleration."

(Indenture § 5.01(b)).

In addressing the "Rights and Remedies" of noteholders, the Indenture provides the following No Action Clause:

> A Holder shall not have any right to institute a suit, action or proceeding for the enforcement of this Indenture, or for the exercise of any other remedy hereunder unless: (1) such Holder has previously given the Trustee notice than an Event of Default is continuing; (2) Holders of at least 25% in aggregate principal amount of the then Outstanding Notes voting as a single class have requested the Trustee to pursue the remedy; (3) such Holders have offered the Trustee security or indemnity satisfactory to the Trustee against any loss, liability or expense; (4) the Trustee has not complied with such request within 60 days after the receipt of the request and the offer of security or indemnity; and (5) Holders of a majority in aggregate principal amount of the then Outstanding Notes voting as a single class have not given the Trustee a direction inconsistent with such request within such 60-day period . . . .

(*Id.* § 5.01(i)).

There is an exception to the No Action Clause, however, which carves out an "[u]nconditional [r]ight of [h]olders to [r]eceive [p]rincipal, [p]remium and [i]nterest" upon the maturity date of their notes. (*Id.* § 5.01(j)). Section 5.01(j) specifically provides:

> Notwithstanding any other provision in this Indenture, any Holder shall have the right which is absolute and unconditional, to receive payment of the principal of (and premium and Additional Amounts, if any) and interest, if any, on such Note on the Maturity Date of such Note . . . and to institute suit for the enforcement of any such payment, and such rights shall not be impaired without the consent of such Holder.

(*Id.*)

Finally, § 5.01(l) of the Indenture, entitled "Rights and Remedies Cumulative" provides the following:

> Except as otherwise provided with the respect to the replacement or payment of mutilated, destroyed, lost or stolen Notes, no right or remedy herein conferred upon or reserved to the Trustee or to the Holders is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by Applicable Law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

(*Id.* § 5.01(l)).

Attached to the Indenture is Exhibit A, labeled "Form of Note." (*Id.* at iii). Plaintiffs do not dispute that this is an accurate representation of the form of their notes. As the "Form of Note" is

3

attached as an exhibit to the Complaint. *See generally* (Compl. ¶ 1). The "Form of Note" provides:

> Each Holder, by accepting a Note, agrees to be bound by all of the terms and provisions of the Indenture, as amended from time to time…Holders may not enforce the Indenture or the Notes except as provided in the Indenture.

(Indenture, Ex A at 8, 10).

## LEGAL STANDARDS

**I. 12(b)(6) Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 566). In "[d]etermining whether a complaint states a plausible claim…[t]he court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Gillespie v. St. Regis Residence Club, New York Inc.*, No. 16-cv-9390, 2019 WL 4747185, at *4 (S.D.N.Y. Sept. 30, 2019) (citing *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam)).

On a Rule 12(b)(6) motion to dismiss, the court's "consideration is limited to the factual allegations in [the] complaint ..., documents attached to the complaint as an exhibit or incorporated in it by reference ..., matters of which judicial notice may be taken ..., or documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied on bringing suit." *Adams v. Crystal City Marriott Hotel*, No. 02 Civ. 10258, 2004 WL 744489, *3 (S.D.N.Y.

4

Apr. 6, 2004) (alteration in original) (quoting *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993)).

## II. Motion to Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Courts looks to five key factors in deciding a motion to stay:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not patties to the civil litigation; and (5) the public interest."

*Kappel v. Comfort,* 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (quoting *Volmar Distribs., Inc. v. N. Y Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)).

## DISCUSSION

### I. Dismissal

"To establish a claim for breach of contract under New York law, a plaintiff must allege: (1) the existence of a contract; (2) adequate performance of the contract by plaintiff; (3) Defendant's breach of the contract; and (4) damages." *Jones v. Mercedes-Benz, Manhattan, Inc.*, No. 1:19-CV-000472, 2020 WL 1445728, at *3 (S.D.N.Y. Mar. 25, 2020) (citing *Red Fort Capital, Inc. v. Guardhouse Productions, LLC*, 397 F. Supp. 3d. 456, 477–78 (S.D.N.Y. 13, 2019).

PDVSA argues dismissal is warranted because Plaintiffs are barred from bringing suit to enforce their notes pursuant to the terms of the Indenture and attached Form Note. (ECF No. 25).

5

First, PDVSA argues that the Indenture's No Action Clause bars the suit. As the Complaint establishes, Plaintiffs own less than 25% of the principal amount of the Notes and are not proceeding through the Trustee. Thus, according to PDVSA, these Plaintiff noteholders are unable to enforce their notes until their maturity date, which is still more than a year away. (ECF No. 25 at 6–7).

Plaintiffs counter that the No Action Clause only bars them, as holders of less than 25% of the principal amount of the notes, from suing under the terms of the Indenture. The No Action Clause does not, they contend, bar them from suing to enforce the terms of the Notes.

"[T]he general purpose of No Action Clauses…[is] to make it more difficult for individual investors to bring suits that are frivolous or otherwise not in the interest of their fellow investors." *Matters of Trusts Established under the Pooling and Servicing Agreements relating to the Wachovia Bank Commercial Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2007-C30, et al*, 375 F.Supp.3d 441, 451 (S.D.N.Y. 2019). "Although such clauses are 'strictly construed,' they are, nonetheless, 'regularly enforced by federal and state courts to preclude state law claims' that are brought under an indenture." *Penades v. Republic of Equador*, No. 15-cv-725, 2016 WL 5793412, at *3 (S.D.N.Y. Sept. 30, 2016) (quoting *MeehanCombs Glob. Credit Opportunities Funds, LP v. Caesars Entm't Corp.,* 80 F. Supp. 3d 507, 513 (S.D.N.Y. 2015)).

The leading New York State case on no-action clauses is *Quadrant Structured Products. Co., Ltd. v. Vertin*, 23 N.Y.3d 549 (2014). "Quadrant Structured Products Company, Ltd. (Quadrant) sued several defendants in the Delaware Court of Chancery for alleged wrongdoing related to notes purchased by Quadrant and issued by defendant Anthilon Capital Corp." *Id.* at 553. Anthilon issued a series of securities consisting of senior subordinated notes, subordinated

6

notes, and junior notes. *Id.* at 554. Quadrant owned certain classes of these notes, which were issued pursuant to indentures with trustees. *Id.* at 554–55. Quadrant sued Anthilon "asserting various counts directly and derivatively as a creditor of Anthilon," including, "claims for breaches of fiduciary duty" and "fraudulent transfer claims." "Defendants moved to dismiss the suit as barred by a no-action clause contained in the indenture agreement." *Id.* at 553.

The no-action clause in *Quadrant* provided:

> *Limitations on Suits by Securityholder.* No holder of any Security shall have any right by virtue or by availing of any provision of this Indenture to institute any action or proceeding at law or in equity or in bankruptcy or otherwise upon or under or with respect to this Indenture, or for the appointment of a trustee, receiver, liquidator, custodian or other similar official or for any other remedy hereunder, unless such holder previously shall have given to the Trustee written notice of default in respect of the series of Securities held by such Securityholder and of the continuance thereof, as hereinbefore provided, and unless also the holders of not less than 50% of the aggregate principal amount of the relevant series of Securities at the time Outstanding shall have made written request upon the Trustee to institute such action or proceedings in its own name as trustee hereunder and shall have offered to the Trustee such reasonable indemnity as it may require against the costs, expenses and liabilities to be incurred therein or thereby and the Trustee for 60 days after its receipt of such notice, request and offer of indemnity shall have failed to institute any such action or proceedings and no direction inconsistent with such written request shall have been given to the Trustee pursuant to Section 7.08 hereof within such 60 days.

*Id.* at 556–57.

"Defendants argued that the clause permitted only Trustee-initiated suits upon request of a majority of shareholders, and prohibited individual securityholder actions." *Id.* at 557. The Court of Appeals rejected this argument, "conclud[ing] that a no-action clause which by its language applies to rights and remedies under the provisions of the indenture agreement, but makes no mention of individual suits on the securities, does not preclude enforcement of a securityholder's independent common-law or statutory rights." *Id.* at 559.

The court explained that no action clauses must be strictly construed and applied other well-established principles of contract interpretation to reach this conclusion. The court found

7

significant the no-action clause's "specific reference to the indenture," which the court reasoned "on its face limits the clause to the contract rights recognized by the indenture agreement itself." *Id.* at 560. ("[I]f parties to a contract omit terms—particularly, terms that are readily found in other, similar contracts—the inescapable conclusion is that the parties intended the omission.") The *Quadrant* court contrasted the clause there "to no-action clauses which extend beyond the four corners of the indenture to cover securities-based claims," explaining that "where the no-action clause refers to both the indenture and the securities, the securityholder's claims are subject to the terms of the clause, whether those claims be contractual in nature and based on the indenture agreement, or arise from common law and statute." *Id.* at 561.

This court considered and applied *Quadrant* in *Penades v. Republic of Ecuador*, where the no-action clause in play was broader. 2016 WL 5793412, at *3. Plaintiff owned so-called "2030 Bonds" issued by the Defendant pursuant to an indenture agreement. *Id.* at *1. The indenture contained a "'no-action clause,' pursuant to which an individual bondholder may only bring suit under the Indenture *or the 2030 Bonds* if the bondholder satisfies the conditions precedent detailed in…the Indenture." *Id.* (emphasis added). The court distinguished *Quadrant*, noting that here, the no-action clause refers specifically to claims and remedies arising under not only the indenture, but also the Bonds. *Id.* at *3.

The No Action Clause here is narrow as in *Quadrant* and limited to claims related to the Indenture. It does not bar specifically individual suits for enforcement of the notes. PDVSA attempts to distinguish *Quadrant* on the basis that there, plaintiff sought claims for breaches of fiduciary duty and fraudulent transfer, as opposed to breach of contract claims, pursued here. (ECF No. 25 at 8–9). Breach of contract claims, PDVSA argues, peculiarly arise under the indenture. (*Id.*). PDVSA's argument is undercut by *Penades*, where the plaintiff sued for interest

payments owed him on the bonds. Again, although plaintiff's effort to enforce the bonds in *Penades* was denied, this court's application of *Quadrant* to this breach of contract case suggests that *Quadrant*'s holding is not as limited as PDVSA advocates.

PDVSA additionally argues that, as demonstrated by language in the Form Notes, the notes themselves bar Plaintiffs' suit in that they explicitly prohibit individual noteholders from "enforc[ing] the Indenture or the Notes except as provided in the Indenture." (Indenture, Ex A at 8, 10); *see* (ECF 25 at 7). Because the Indenture does not provide noteholders with an affirmative right to enforce the notes, PDVSA seems to argue, this provision in the Form Note effectively prevents such note-based suits pursuant to the Indenture's No Action Clause.

PDVSA's argument ignores § 5.01(l), the Cumulative Rights and Remedies provision of the Indenture. This provision protects noteholders' rights and remedies existing outside of the Indenture, including the common law right to sue under the Notes. Thus, although the Indenture does not confer Note-based enforcement rights, it does provide that its terms should not be understood to limit the already-existing common law right noteholders have to enforce these instruments. Accordingly, the Form Note language does not bar Plaintiffs' suit.

PDVSA's motion to dismiss based on the No Action Clause in the Indenture and Form Note language is DENIED.

**II. Stay**

PDVSA argues that, if I deny its motion to dismiss, all proceedings in this matter should be stayed for 120 days in light of current events in Venezuela. As an initial matter, this request is moot as 120 days have already passed between the filing of PDVSA's motion and this decision. However, even if the request were not moot, I would deny it for the reasons provided below.

9

PDVSA argues the stay is or was necessary because Venezuela is transitioning from the governance of the Nicolas Maduro regime to the leadership of President Juan Guaidó. (ECF No. 25 at 10). According to PDVSA, because of the Maduro regime's obstruction, President Guaidó's administration does not have full access to or control over significant Republic operations, institutions and personnel necessary to defending against Plaintiffs' claims. (*Id.* at 10, 12).

A stay is also necessary, PDVSA argues, because Guaidó is attempting to address the political and humanitarian crisis in Venezuela created by the Maduro regime. In addressing this crisis, Guaidó is structuring a plan to resolve claims against the Republic, including those arising out of the Maduro government's indentures. (*Id.* at 13). PDVSA asserts that Guaidó retained a skilled debt restructuring lawyer pro bono to help "restructure" these existing claims. (*Id.* at 14). To complete the plan and resolve all outstanding claims, the Guaidó administration, PDVSA argues, needs additional time. (*Id.*)

Despite these arguments, the stay factors here counsel against further delay. Plaintiffs have an interest in proceeding quickly. As Plaintiffs argue in briefing, further delay in this matter jeopardizes their ability to recover anything from PDVSA, as other creditors already hold judgments against PDVSA. In particular, Plaintiffs cite to a Third Circuit case in which the court held PDVSA and the Republic of Venezuela to be alter egos and affirmed the district court's writ of attachment allowing a judgment creditor of the Republic to proceed against PDVSA's U.S.-based assets. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019).

PDVSA argues that Plaintiffs would not be prejudiced by a stay because recent regulations issued by the Office of Foreign Assets Control ("OFAC") prohibit the enforcement

of any judgments against PDVSA without a special license. (ECF No. 25 at 16–17). PDVSA's argument is unpersuasive. First, just by obtaining judgments against PDVSA, other creditors could alter Plaintiffs' priority over their claims to PDVSA assets. Second, other creditors may be able to obtain these licenses and thus, collect on judgments.

PDVSA has a significant interest in facts and resources essential to defending against Plaintiffs' claims. However, that interest is difficult to quantify given PDVSA's failure to identify with any specificity what information it needs to obtain and what the timeline will be for obtaining it. As Plaintiffs argue, this is a relatively straightforward breach of contract case and the information Defendant requires to proceed could be as simple as confirmation of the ownership and amounts of the notes, information that might be obtainable from other sources such as the Indenture Trustee or Principal Paying Agent, both of whom Plaintiffs assert, are based in the United States. (ECF 27 at 13).

Judge Nathan's opinion, denying PDVSA and a related defendant an extension of their previous 120-day stay is instructive. *Red Tree Investments, LLC v. Petroleos De Venezuela, S.A. et al*, No. 19-cv-2519, 2020 WL 209290 (S.D.N.Y. Jan. 14, 2020). Defendants raised similar arguments as here regarding why a stay was necessary. Judge Nathan acknowledged Defendants' "substantial interest in securing access to relevant facts and personnel," but reasoned that they had "already been afforded a considerable amount of time to do so, and it is not clear that any amount of additional time will allow them access to the information they seek." *Id.* at *3. Judge Nathan concluded ultimately that "it would not be appropriate or fair to the plaintiff to stay this case indefinitely until…transition [to the Guaido government] is completed." *Id.* (quoting *OI European Group B.V. v. Bolivarian Republic of Venezuela*, No. 16-cv-1533 (ABJ), Dkt. No. 101 at 8 (D.D.C. Nov. 1, 2019)). I reach the same conclusion that a stay here would not be warranted.

## CONCLUSION

Defendant's motion to dismiss, or in the alternative, for a stay is DENIED. This opinion resolves ECF Nos. 24 and 31 The parties should file a joint status report by October 10, 2020.

**SO ORDERED.**

Dated: September 30, 2020
New York, New York

**ANDREW L. CARTER, JR.**
**United States District Judge**