USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/5/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
RUDI LOVATI, *et al.*,

                Plaintiffs,

    -v-

PETRÓLEOS DE VENEZUELA, S.A.,

               Defendant.
---------------------------------------------------------------X

**MEMORANDUM ORDER**

19-CV-4799 (ALC) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

    In this breach of contract case, Plaintiffs allege that Defendant Petróleos De Venezuela, S.A. ("PDVSA") failed to make payments due on notes they owned. Familiarity with the underlying facts of the dispute is assumed for purposes of this Memorandum Order. On February 15, 2022, PDVSA moved for issuance of letters of request and letters rogatory with respect to eight non-party financial institutions in seven countries. Because these requests are relevant to PDVSA's affirmative defenses, and Plaintiffs' arguments that these requests are untimely and not relevant are not persuasive, the motion is granted.

    1. **Overview of Dispute**

    PDVSA claims that the requested discovery is relevant and necessary to support its affirmative defenses of 1) impossibility; 2) lack of standing; and 3) preclusion by the terms of the notes, payment, release, waiver, and ratification. Dkt. No. 81 ("Def. Mem.").

    Plaintiffs oppose this request. Dkt. No. 82 ("Pl. Opp."). They argue that the discovery is: 1) not timely, because PDVSA did not identify these eight entities in its

1

initial disclosures, amended initial disclosures, or otherwise seek authority to serve letters of request as part of multiple rounds of motion practice that have taken place in the three years since the complaint was filed in May 2019 (and continued delay would be prejudicial); and 2) not relevant because standing has already been found to exist, and the impossibility defense does not exist because the debt obligations arose in 2011, prior to the August 2017 imposition of sanctions. Plaintiffs further request that if the Court grants the motion in whole or in part, it should also impose strict time limits so as not to extend beyond the fact discovery deadline of July 1, 2022.

In its reply brief, PDVSA counters that 1) the motion is timely because it was filed only 11 days after the Scheduling Order was entered following the Rule 16 conference on February 4, 2022; and 2) it can still prove the affirmative defenses of standing and impossibility.  Dkt. No. 84 ("Def. Rep.").  It also contends that Plaintiffs' additional request imposing time limits on this discovery is premature.

### 2. Legal Standard

"The decision of whether to issue letters rogatory is within the discretion of the court . . . [and] when determining whether to issue letters rogatory, courts apply the principles of Federal Rule of Civil Procedure 26." *Nespresso USA, Inc. v. Williams-Sonoma, Inc.*, No. 19-CV-4223 (LAP) (KHP), 2021 WL 942736, at *2 (S.D.N.Y. Mar. 12, 2021) (cleaned up).  "For example, U.S. courts have considered whether the movant makes a reasonable showing that the evidence sought may be material or may lead to the discovery of material evidence, and other arguments as

to breadth, relevance, and the availability of the information sought from other sources." *Lantheus Medical Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 776 (S.D.N.Y. 2012) (citations omitted).

"Given the broad nature of relevant material, the party seeking application of Hague Convention procedures bears the burden of persuasion . . . but that burden is not heavy." *Villella v. Chemical & Mining Co. of Chile Inc.*, No. 15-CV-2106 (ER), 2019 WL 171987, at *3 (S.D.N.Y. Jan. 11, 2019) (internal citations omitted). "Courts routinely issue such letters where the movant makes a reasonable showing that the evidence sought may be material or may lead to the discovery of material evidence." *Netherby Ltd. v. Jones Apparel Group, Inc.*, No. 04-CV-7028 (GEL), 2005 WL 1214345, at *1 (S.D.N.Y. May 18, 2005). "Once the movant makes that showing, it is generally the burden of the party opposing issuance to show good reason that the letter rogatory should not issue." *Parimal v. Manitex Int'l, Inc.,* No. 3:19-CV-1910 (MPS), 2021 WL 1978347, at *3 (D. Conn. May 18, 2021) (internal citations omitted).

3. Discussion

   a. **Relevance to Affirmative Defenses**

PDVSA contends that it needs documents from the eight financial institutions in order to demonstrate that Plaintiffs did not have authorization to assert rights under the notes (in support of its standing defense), and that payments under the notes were made or attempted but rejected as a result of banking policies responsive to the 2017 U.S. sanctions on Venezuela (in support of

its impossibility and payment defenses). Specifically, it argues that 1) the "depositories of the PDVSA Notes are the only entities with information regarding the official registers of owners and beneficial owners of the Notes, as well as information establishing the powers granted to third parties to act on behalf of such owners and beneficial owners," and 2) "PDVSA lacks access to its own documents and files as a result of the political situation in Venezuela; however, it understands that payments were made, or attempted, under the terms of the PDVSA Notes, but that such payments may have been rejected as a result of banking policies introduced in response to OFAC sanctions. . . . [therefore, only PDVSA's originating banks] can determine if any attempted payments by PDVSA were ever made and rejected." Def. Mem. at 2.

PDVSA identifies the following entities as having information relevant to its defenses:

- Banque Internationale à Luxembourg:  As a listing and paying agent, this entity was responsible for handling payments, registrations of transfer, and surrenders of the Notes.  PDVSA seeks documents showing 1) payments that have been made or attempted under these notes, and which will demonstrate whether the Lovati Plaintiffs, or any predecessors, took actions to seek payment, surrender, or redeem the notes from the Luxembourg paying agent; 2) receipt or rejection of funds from PDVSA to confirm whether payments were attempted but rejected due to this bank's policies regarding the receipt of funds from sanctioned entities.  *Id*. at 4–5.

- Clearstream Banking S.A.:  This entity served as a depository through which PDVSA notes were held, and as such is "likely to have maintained registers of all owners of the notes."  *Id*. at 5.  PDVSA seeks documents related to its "ownership records," "records it has relating to authorizations granted" to Plaintiffs, and "payments . . . to the Lovati Plaintiffs."  *Id*.

4

- <u>China CITIC, Dinosaur Merchant Bank Limited, Gazprombank, and Novo Banco</u>: PDVSA maintained bank accounts with these entities and used those accounts to make payments due on its note and other financing obligations. It seeks documents to demonstrate that it attempted to make payments under the notes by wire transfer but that they were rejected by banking institutions due to the sanctions imposed. Def. Mem. at 6–7.

- <u>Euroclear Bank S.A./N.V.</u>: This entity served as a depository through which PDVSA notes were held, and as such is "likely to have maintained registers of all owners of the notes." *Id.* at 7. PDVSA seeks documents related to its "ownership records," "records it has relating to authorizations granted" to Plaintiffs, and "payments . . . to the Lovati Plaintiffs." *Id.* at 7–8.

- <u>Zuma Bank</u>: PDVSA asserts that "Documentation from PDVSA's bank, Zuma Bank, will show that PDVSA attempted to make payments under the notes by wire transfer, but those payments were rejected by banking institutions involved in the transactions." *Id.* at 8.

i. <u>Standing Defense</u>

PDVSA "intends to establish that the Lovati Plaintiffs lack standing to enforce the November 2011 Notes because they have failed to acquire the rights of a Holder or are not beneficial owners of the November 2011 Notes under the terms of the relevant notes and indenture." Def. Mem. at 2. Plaintiffs contend that the standing argument "was disposed of when the Court denied PDVSA's third Rule 12 motion." Pl. Opp. at 7. In that decision, Judge Carter observed that "[a]s beneficial owners, the plaintiffs satisfied Article III standing by sufficiently pleading a legally protected interest at the inception of this case: they alleged a monetary loss, directly traceable to PDVSA's alleged breach, redressable by this Court." *Lovati v. Petróleos de Venezuela, S.A.*, 2021 WL 5908953, at *2 (S.D.N.Y. Dec. 14, 2021) (citing *Carter v. HealthPort Techs., LLC*, 822 F. 3d 47, 55 (2d Cir. 2016)). The motion to dismiss was thus denied because, construing the complaint in favor of Plaintiffs, Article III

5

standing existed sufficient for the case to proceed to the merits of the claim. Further, Judge Carter explained how Plaintiffs, as beneficial owners of the notes, may also have prudential standing to take actions as "holders" of the notes – including suing for non-payment – if authorized by the registered holder. *See id.* A case cannot be dismissed simply because such authorization was obtained after a lawsuit is initiated, rather than in advance. *See id.* (citing *Allan Applestein TTEE FBO D.C.A. Grantor Tr. v. Province of Buenos Aires*, 415 F. 3d 242 (2d Cir. 2005)).

Contrary to Plaintiffs' assertion, nothing in Judge Carter's decision curtails the potential for PDVSA to proceed with an affirmative defense based on prudential standing. Plaintiffs are correct that it is "frivolous" for PDVSA to assert that it intends to argue they are not beneficial owners, Pl. Opp. at 7, because not only did Judge Carter observe that they are beneficial owners, but PDVSA itself referred to them as such in past motion papers, even if they did not specifically concede that point. *See Lovati*, 2021 WL 5908953, at *1, 2; Dkt. No. 50. However, the same argument does not apply for the other portion of PDVSA's standing argument, which is that Plaintiffs "failed to acquire the rights of a Holder." Def. Mem. at 2. The issue of whether Plaintiffs were authorized by the registered holder has not yet been decided in this litigation. Indeed, Judge Carter's December 2021 decision affirmatively stated that the amended complaint would "contain[ ] the allegation that the registered holder has authorized the plaintiffs to bring this suit, solidifying Plaintiffs' right to pursue the claims in this case." Therefore, an affirmative defense to counter such an allegation is squarely at issue in the litigation.

6

Plaintiffs contend that they have provided "dispositive proof" of this authorization in the letter they attached to their January 3, 2022 Supplemental Complaint. Pl. Opp. at 8; *see* Dkt. No. 72-2. However, at this stage in the proceedings, there is no support for Plaintiffs' assertion that the letter constitutes "proof," rather than evidence that can properly be rebutted by other evidence – precisely what PDVSA seeks to develop during discovery. Because the documents PDVSA seeks necessitating the letters rogatory and letters of request are germane to the issue of Plaintiffs' authorization, the discovery should be permitted.

      ii. Impossibility Defense

PDVSA further "intends to establish that the sanctions that the U.S. Department of Treasury Office of Foreign Assets Control ("OFAC") imposed on the Venezuelan oil industry beginning in 2017 made it impossible or objectively impracticable for PDVSA to perform its payment obligations under the notes." Def. Mem. at 2. Plaintiffs challenge this defense on two grounds. First, they assert that the 2017 sanctions do not apply as a matter of law to debt issued prior to August 2017. Pl. Opp. At 9. Second, they assert that PDVSA cannot satisfy the high burden of impossibility because it failed to meet that burden in other cases and does not have access to its own documents and files. *Id.*

With respect to Plaintiffs' first argument, PDVSA is correct that the determination of whether the sanctions apply to debt issued prior to August 2017 is a fact-specific inquiry based on the particular debt in question, not one determinable based on the date of the debt issuance alone. Def. Rep. at 6; *see*

7

*Dresser-Rand Co. v. Petróleos de Venezuela, S.A.,* No. 19-CV-2689 (LLS), 2021 WL 5831766, at *5 (S.D.N.Y. Dec. 8, 2021) ("if the length of the repayment period on a preexisting note is altered after August 25, 2017, then the altered note is considered new debt and prohibited").  As in other related cases, the allegations at issue here concern PDVSA's purported failure to make payments on the notes on dates after the August sanctions were imposed: November 17, 2017, May 17, 2018, November 17, 2018, and March 17, 2019.  Pl. Opp. at 3.  Any determination with respect to whether the sanctions thus apply to the Lovati Notes requires a fact-specific inquiry as to the relevant agreements and any alterations that were made, not based solely on their dates of issuance.  *See Dresser-Rand Co.,* 2021 WL 5831766, at *5–10; *see also Red Tree Investments v. PDVSA*, Nos. 19-CV-2519 (PKC), 19-CV-2523 (PKC), 2021 WL 6092462 (S.D.N.Y. Dec. 22, 2021) (failure to present facts sufficient to allege impossibility defense on summary judgment).  Therefore, PDVSA's impossibility defense is not precluded as a matter of law at this stage of the litigation.

    Plaintiffs' second argument is also unpersuasive.  PDVSA's inability to establish impossibility in other cases is not determinative of its ability to do so here given the required fact-based inquiry.  Likewise, a lack of access to its own documents is not dispositive because PDVSA may be able to produce sufficient evidence obtained from third parties.  Moreover, nowhere has PDVSA "already concede[d] that it cannot meet its burden of proof" as Plaintiffs assert.  Pl. Opp. at 9.

Finally and notably, Judge Caproni granted PDVSA's request in a similar case on February 11, 2022. *Syracuse Mountains Corp. v. Petróleos de Venezuela, S.A,* No. 21-CV-2684, Dkt. No. 49. While she rendered an oral decision in granting the motion, the substantive bases for PDVSA's motion before her were similar to the arguments made in this case, and the previous decisions in *Dresser-Rand* and *Red Tree Investments* did not preclude her approval of the requests. *See id*, Dkt. Nos. 34, 40, 43–45, 65.

In sum, because the documents PDVSA seeks are relevant to its affirmative defenses, discovery will be permitted.

### b. Timeliness

Plaintiffs separately allege that PDVSA should have taken this discovery earlier in the case, and that it is untimely to do so now because it did not seek authority to serve letters on the banks at issue here during the pendency of its three Rule 12 motions. Pl. Opp. at 3–7.

A claim that it is too late to seek this discovery is without merit. First, as PDVSA notes, the Rule 26(f) conference in this case only took place on January 31, 2022. Def. Rep. at 1. The Court entered the Scheduling Order on February 4, 2022. Dkt. No. 77. The motion for issuance of letters rogatory was filed on February 15, 2022, only 11 days later. The Scheduling Order sets out approximately five months for discovery. PDVSA is entitled to use that time for discovery that meets the requirements of Rule 26. "While the Hague process is generally slow-moving and will undoubtedly prejudice Plaintiff to the extent that issuing these requests will

9

delay the litigation . . . these circumstances should not bar the instant motion, which purports to seek documents that are central to the claims and defenses asserted by the parties." *Nespresso USA, Inc.*, 2021 WL 942736, at *3.

Further, Plaintiffs argue that a pending Rule 12 motion is "no excuse for PDVSA's failure to seek discovery." *Id.* at 4. However, upon review, none of the cases Plaintiffs cite for their proposition that the requests should have been made even while Rule 12 motions were pending is analogous, because – as PDVSA observes – in each of those cases, discovery was already underway in some capacity, which is not the situation here. Pl. Opp. at 4-5 (citing cases). Plaintiffs do not acknowledge that a party such as PDVSA may well wait to engage in expensive and cumbersome foreign discovery if it believed it could first succeed on a Rule 12 motion.

Additionally, Plaintiffs contend that PDVSA did not provide sufficient notice "that it needed discovery to fend off summary judgment, let alone take any steps to obtain the discovery it now seeks," or "tell Plaintiffs that it might seek such discovery" until recently. Pl. Opp. at 5. They argue that PDVSA "inexplicably did not disclose any of the Eight Banks in its November 6, 2020 Initial Disclosures." Pl. Opp. at 6. While not disputed that the banks were not previously identified, it was clear in 2020 that PDVSA would seek general discovery, at least on the issue of standing. *See* Dkt. No. 38 (October 11, 2020 status report indicating that parties shall serve initial disclosures by 11/6/2020 and meet and confer regarding "any additional discovery that is needed . . ."); Dkt. No. 47 (November 20, 2020 consent

10

letter indicating that "PDVSA has specifically requested documents sufficient to demonstrate the ownership of each of the plaintiffs of the Notes as well as documents concerning a December 8, 2019 inter-plaintiff transfer of certain beneficial ownership interests that plaintiffs recently disclosed"); Dkt. No. 55 (December 21, 2020 status report indicating that the parties continue to discuss the timing of all discovery in light of pending and forthcoming motions, and that PDVSA "has specifically requested documents sufficient to demonstrate the ownership interest of each of the Plaintiffs in the Notes at issue in this action, as well as documents concerning a December 8, 2019 inter-plaintiff transfer of certain beneficial ownership interests that Plaintiffs recently disclosed").  While it is true that PDVSA's June 11, 2021 letter does not address a need for discovery, Plaintiffs cite no law to support the proposition that its absence from the letter serves as a waiver or is otherwise relevant to the determination.  Pl. Mem. at 4–5.  It is thus not clear on the record before the Court that PDVSA failed to uphold any obligation it had to serve these requests or name the Eight Banks throughout the pendency of the litigation.

Because the motion was filed less than two weeks after the discovery period formally commenced, and more than four months before the end of fact discovery, the request is not so untimely as to bar it from proceeding.

### c. Request for No Further Extension

A fact discovery deadline is currently set for July 1, 2022.  It is premature to address the issue of altered deadlines when no such application is pending before

the Court. Thus, Plaintiffs' request to impose strict time limits is based on speculation and is therefore improper at this time. If a discovery extension is sought, the Court will address the issue then.

To streamline discovery ahead of the July 1, 2022 deadline, PDVSA is directed to avoid repetition and undue delay in seeking information which is otherwise available to it. Having reviewed the individual proposed requests contained in PDVSA's motion, the Court notes that many appear identical to requests already issued in *Syracuse Mountains Corp.*, and thus PDVSA may already have obtained some of the information it is seeking in this application. *See Syracuse Mountains Corp.*, No. 21-CV-2684, Dkt. Nos. 50–59.[1] Therefore, the Court hereby directs PDVSA to revise its proposed requests to the extent necessary to ensure that the letters issued in this case will not be duplicative of those issued in others, and to clarify that PDVSA is only seeking information not already being produced in response to earlier requests.

---

[1] As one example, a letter of request was issued in *Syracuse Mountains Corp.* to Banque Internationale a Luxembourg, S.A., requesting "[a]ny documents concerning your policies regarding the receipt of funds from PDVSA or other Venezuelan entities," and "[a]ny documents concerning your policies regarding the receipt of funds from, or payments to, entities sanctioned by the United States," which is the exact language of information sought in one of the proposed letters of request to the same Bank here in *Lovati*. *Compare Syracuse Mountains Corp.*, No. 21-CV-2684, Dkt. No. 52 at 9 *with Lovati*, Dkt. No. 80-1 at 8. Another example is in the letters of request for Novo Banco, S.A. The term "Paying Agent" in that letter in *Syracuse Mountains Corp.* includes Citibank N.A. (and those acting on its behalf), while "Paying Agent" in the letters in *Lovati* here is defined as Citibank N.A. (and those acting on its behalf). Thus, the requests already made of Novo Banco, S.A. in *Syracuse Mountains Corp.* appear to be inclusive of the new requests proposed to be made here. See *Syracuse Mountains Corp.*, No. 21-CV-2684, Dkt. No. 50 at 6; *Lovati*, Dkt. No. 80-6 at 7.

### 4. Conclusion

In sum, PDVSA has met its burden of demonstrating the proposed letters' relevance to its affirmative defenses, and Plaintiff has not established that the requests are untimely. Whether PDVSA will ultimately offer sufficient evidence to establish the high bar of an impossibility defense, or combat Plaintiffs' evidence of their authorization to sue under the Notes, is not relevant to the calculation of what discovery it should be permitted to obtain. Thus, the motion is granted. PDVSA is directed to file updated letters for signature within seven days of this Memorandum Order.

The Clerk is respectfully directed to close Docket No. 80 and mark it as granted.

**SO ORDERED.**

Dated: May 5, 2022
      New York, New York

_____
JAMES L. COTT
United States Magistrate Judge