UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUDI LOVATI and ALESSANDRA LOVATI,<br><br>         Plaintiffs,<br><br>-against-<br><br>PETRÓLEOS DE VENEZUELA, S.A.,<br><br>         Defendant. | 1:19-cv-04799 (ALC) (HJR)<br><br>OPINION & ORDER |

**ANDREW L. CARTER, JR., District Judge:**

Plaintiffs Rudi Lovati and Alessandra Lovati commenced this breach of contract action against Defendant Petróleos de Venezuela, S.A. ("PDVSA"), seeking recovery for payments allegedly due under notes issued by PDVSA. Both parties move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, both motions are **DENIED**.

## BACKGROUND

### I. Factual History

The Court presumes the parties' familiarity with the underlying facts in this case. A more complete summary of the facts can be found in this Court's September 30, 2020 Opinion and Order denying PDVSA's motion to dismiss. ECF No. 37.

PDVSA is a state-owned oil company of Venezuela. ECF No. 140 ¶ 2.[1] On November 17, 2011, PDVSA entered into an Indenture, pursuant to which it issued a series of notes ("Notes") to

---

[1] A majority of the factual record is undisputed. This factual history is taken from Defendant's submitted Statement of Material Facts pursuant to Local Civil Rule 56.1 ("ECF No. 140"), Plaintiffs' submitted Statement of Material Facts ("ECF No. 132"), Plaintiffs' Counterstatement of Material Facts ("ECF No. 145"), Defendant's Counterstatement of Material Facts ("ECF No. 149"), Defendant's memorandum of law in support of its motion for summary judgment ("ECF No. 141"), Plaintiffs' memorandum of law in support of their motion for summary judgment ("ECF No. 134"), Plaintiffs' memorandum of law in opposition to Defendant's motion ("ECF No. 144"), and Defendant's memorandum of law in opposition to Plaintiffs' motion ("ECF No. 148").

1

Plaintiffs Rudi Lovati and Alessandra Lovati, and others. *Id.* ¶ 23. On their issue date, the aggregate principal amount of the Notes delivered under the Indenture was $2,394,239,600. *Id.* The principal amount of the Notes owned by Plaintiffs was $55,455,000. ECF No. 132 ¶ 23.

Pursuant to the terms of the Indenture, PDVSA operates as the guarantor; Wilmington Trust Company as the trustee; Citibank, N.A., as registrar, transfer agent, and principal paying agent; and Dexia Banque Internationale à Luxembourg, Société Anononyme, as Luxembourg listing agent and paying agent. ECF No. 132 ¶ 2. In 2016, Citibank resigned and the Delaware Trust Company ("Delaware Trust," "Principal Paying Agent," or "Agent") became the registrar, transfer agent, and principal paying agent. ECF No. 140 ¶ 28. The nominal owner of the Notes is the Depository Trust Company, while Plaintiffs Rudi Lovati and Alessandra Lovati are two of many beneficial owners. ECF No. 132 ¶ 3.

Each Note bears a 9% interest rate *per annum*, with the principal due in three installments on November 17, 2019, November 17, 2020, and November 17, 2021, the maturity date. *Id.* ¶¶ 8–12. Section 2.08(b) of the Indenture provides that the Notes impose semi-annual interest payment obligations upon PDVSA, with payments being due every May 17 and November 17 until the principal has been paid. *Id.* ¶ 10. The Indenture requires PDVSA to make payments directly to the Agent in New York City. ECF No. 140 ¶¶ 33, 40.

PDVSA has not made any principal or interest payments on the Notes since May 2017. ECF No. 132 ¶¶ 13-14. The total amount of missed principal and interest payments on Plaintiff Rudi Lovati's Notes is $85,316,000. *Id.* ¶ 34. The total amount of missed principal and interest payments on Plaintiff Alessandra Lovati's Notes is $84,700. *Id.* ¶ 35. PDVSA argues that its defaults are an unavoidable consequence of the U.S. response to the Maduro regime in Venezuela. ECF No. 141 at 15. Specifically, PDVSA argues that banks, in an effort to avoid U.S. sanctions

imposed against Venezuela-related entities, refused to process its payments on the Notes. *Id.*; ECF No. 148 at 3.

Initially, PNC Bank had processed payments made to the Agent, but on June 29, 2017, it alerted the Agent that it would no longer do so. ECF No. 140 ¶ 97. In the following months, neither the Agent nor PDVSA could locate a qualifying bank to accept payments from PDVSA on behalf of the Agent. ECF No. 148 at 5. "The[y] approached numerous banks, including (i) U.S. Bank, N.A., (ii) JPMorgan Chase Bank, N.A. ("JPMorgan"), (iii) MUFG Union Bank, N.A., (iv) Santander Bank, (v) Dinosaur Merchant Bank, (vi) BBVA Compass Bank, (vii) BNP Paribas Bank, (viii) Société Générale Bank, (ix) China Citic Bank, and (x) Bank of China New York." *Id*. A representative for the Agent testified that every qualified bank contacted was unwilling to process PDVSA's deposits on the Notes. *Id*. Unable to find a replacement bank, the Agent concluded it was unable to execute its functions under the Indenture due to circumstances beyond its reasonable control, and resigned. *Id*. at 6.

Plaintiffs argue that PDVSA had alternative options to make payments on the Notes beyond these efforts, offering evidence that "PDVSA made payments of interest and principal on [other] Notes in the latter part of 2017, all of 2018, and the early part of 2019." ECF No. 132 ¶ 38. Additionally, Plaintiffs highlight that after PNC Bank refused to process payments, PDVSA was still able to, "on several occasions, . . . transfer funds to DTCC, the nominal owners of the bonds, by transmitting funds from a PDVSA bank account to JP Morgan Chase, which functioned as DTCC's bank." *Id.* ¶¶ 43, 45.

On November 17, 2017, for the first time in six years, PDVSA missed a payment on the Notes. ECF No. 140 ¶¶ 116-117. Despite demands for payment, PDVSA has failed to make any payments on the Notes since then. ECF No. 132 ¶ 16.

3

## II. Procedural History

On May 23, 2019, Plaintiffs filed this breach of contract action. *See* ECF No. 1 ("Compl."). Defendant filed a motion to dismiss the complaint, which the Court denied on September 30, 2020. *See* ECF No. 37. Defendant later filed a motion for judgment on the pleadings, which the Court denied on December 13, 2021. *See* ECF No. 68. In that opinion, the Court granted Plaintiffs' leave to amend their complaint. *Id.* Plaintiffs did and filed the amended complaint on January 3, 2022. *See* ECF No. 72 ("AC").

Following discovery, the parties filed cross motions for summary judgment on September 1, 2023. *See* ECF Nos. 126 (Plaintiffs' motion), 135 (Defendant's motion). Both motions are fully briefed. *See* ECF Nos. 134 (Plaintiffs' memorandum in support), 141 (Defendant's memorandum in support), 144 (Plaintiffs' opposition), 148 (Defendant's opposition), 151 (Plaintiffs' reply), 153 (Defendant's reply). The parties jointly move to file portions of their supporting exhibits under seal.[2] ECF No. 125.

Plaintiffs move for summary judgment on their breach of contract claim and Defendant's impossibility defense. *See generally* ECF No. 134. Defendant only contests Plaintiffs' motion as to its impossibility defense, which also forms the basis of its own motion for summary judgment. *See generally* ECF Nos. 141, 148.

---

[2] The Court recognizes that there is a strong First Amendment presumption of public access to judicial documents and proceedings. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20,123–24 (2d Cir. 2006). However, court documents may be sealed if "specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13–14 (1986) (quoting *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984)). After careful review of the parties' submissions, including their letter motion to seal and the proposed redactions, the Court concludes that the parties' unopposed letter motion should be **GRANTED**. The documents have been designated as "Confidential" by a non-party to this action, Delaware Trust, pursuant to the Protective Order entered in this case. *See* ECF No. 79. "Weighing countervailing factors against the public's presumptive right of access, the Court finds that the asserted interests in protecting non-party privacy . . . and banking records outweighs the public's right to access certain portions of the materials at issue." *Sec. & Exch. Comm'n v. Telegram Grp. Inc.*, No. 19-CV-9439 (PKC), 2020 WL 3264264, at *6 (S.D.N.Y. June 17, 2020). The Court reserves the right to request additional briefing on whether these documents should remain sealed at a later stage in this litigation.

4

## LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." *Cortes v. MTA New York City Transit*, 802 F.3d 226, 230 (2d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson*, 477 U.S. at 248. Speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact. *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Walton Ins. Ltd.*, 696 F. Supp. 897, 900 (S.D.N.Y. 1988). An issue of fact is "genuine" when a reasonable fact finder could render a verdict in the nonmoving party's favor. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." (internal quotation omitted)).

At summary judgment, the moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). To avoid summary judgment, a party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. When the moving party has met its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Simsbury-Avon Pres. Soc'y LLC v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial." *Id.* When a motion for summary judgment is unopposed,

a court "may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)) (internal quotation marks omitted).

"If there are cross-motions for summary judgment, the Court must assess each of the motions and determine whether either party is entitled to judgment as a matter of law." *Gen. Ins. Co. of Am. v. Starr Indem. & Liab. Co.*, No. 14-CV-07354 (JGK), 2016 WL 4120635, at *4 (S.D.N.Y. July 22, 2016) (citing *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)). "[W]hen both sides move for summary judgment, neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it. When faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other." *Heublein, Inc.*, 996 F.2d at 1461 (citation omitted). Instead, the court must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (citation omitted).

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). Courts may not assess credibility, nor may they decide between conflicting versions of events because those matters are reserved for the jury. *See Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* (citing *Anderson*, 477 U.S. at 252).

**DISCUSSION**

### I. Breach of Contract

New York law governs in this case. *See* ECF No. 134 at 8; *see also* ECF No. 37 at 5. "In New York, a bond is a contract." *NML Cap., Ltd. v. Republic of Argentina*, 699 F.3d 246, 257–58 (2d Cir. 2012) (citing *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 n.4 (2d Cir. 2009)); *see also MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 517 (S.D.N.Y. 2017) ("A bond is, of course, a contract, and the obligations and rights of the parties are thus defined by the terms of the bond."), *aff'd*, 719 F. App'x 47 (2d Cir. 2017). As such, a claim for a breach of sovereign note obligations turns on a "simple question of contract interpretation." *NML Cap., Ltd.*, 699 F.3d at 258 (citing *EM Ltd. v. Republic of Argentina,* 382 F.3d 291, 292 (2d Cir. 2004)).

To prevail on their claims, Plaintiffs must prove "(i) the existence of a contract; (ii) breach by the other party; and (iii) damages suffered as a result of the breach." *Mun. Cap. Appreciation Partners, I, L.P. v. Page*, 181 F. Supp. 2d 379, 390 (S.D.N.Y. 2002). As previously stated, PDVSA does not contest that Plaintiffs have satisfied their burden with regards to the elements for breach of contract. *See* ECF No. 148; ECF No. 151 at 1. The Court must still examine the Plaintiffs' "submission to determine if [they have] met [their] burden of demonstrating that no material issue of fact remains for trial." *D.H. Blair*, 462 F.3d at 110. The Court finds no genuine issue of material fact remains as to Plaintiffs' breach of contract claim.

Plaintiffs have presented evidence establishing the existence of their contract through sworn testimony and account statements. *See generally* ECF Nos. 130 (declaration and exhibits in support of Plaintiffs' Motion for Summary Judgment), 132; *Mazzini v. Republic of Argentina*, No. 03 Civ. 8120TPG, 2005 WL 743090, at *4 (S.D.N.Y. Mar. 31, 2005) ("In most cases, a properly executed declaration and an account statement will be sufficient to prove that the bonds plaintiffs

claim to own are in fact the bonds held in their accounts."), *aff'd*, 282 F. App'x 907 (2d Cir. 2008). On November 17, 2011, PDVSA entered into an Indenture and, pursuant to it, issued Notes to Plaintiffs. *See* ECF No. 132 ¶ 2. PDVSA agreed to pay the principal in three installments on November 17, 2019, November 17, 2020, and November 17, 2021. *Id.* ¶ 11. Each Note bears a 9% interest rate *per annum*. *Id.* ¶ 9. The Notes impose semi-annual interest payment obligations upon PDVSA until the required principal payments have been met. *Id.* ¶ 10. Specifically, PDVSA agreed to make interest payments to noteholders every May 17 and November 17, until the principal had been paid. *Id.*

PDVSA failed to make interest payments due to Plaintiffs on November 17, 2017, May 17, 2018, November 17, 2018, May 17, 2019, November 17, 2019, May 17, 2020, November 17, 2020, May 17, 2021, November 17, 2021, May 17, 2022, November 17, 2022 and May 17, 2023. *Id.* ¶ 32. PDVSA has also failed to make the required principal payments on November 17, 2019, November 17, 2020 and November 17, 2021. *Id.* ¶ 14. The total amount of missed principal and interest payments on Rudi Lovati's Notes is $85,316,000. *Id.* ¶ 34. The total amount of missed principal and interest payments on Alessandra Lovati's Notes is $84,700. *Id.* ¶ 35.

PDVSA argues that its non-performance is excused because performance was impossible and moves for summary judgment on that defense. *See* ECF No. 141. Before evaluating this impossibility defense, the Court finds Plaintiffs have satisfied their initial burden. There is no genuine issue of material fact as to the existence of the contract, Defendant's non-performance, and Plaintiffs' resulting damages. *See Page*, 181 F. Supp. 2d at 390. The burden now falls on PDVSA to demonstrate "a genuine issue of fact for trial in order to avoid summary judgment." *Simsbury-Avon Pres. Soc'y LLC v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

## II.     Impossibility Defense

New York courts construe the impossibility defense narrowly, in part due to "judicial recognition that the purpose of contract law is to allocate the risks that might affect performance." *Clarex Ltd. v. Natixis Sec. Americas LLC*, 988 F. Supp. 2d 381, 392 (S.D.N.Y. 2013) (quoting *Kel Kim Corp. v. Cent. Markets, Inc.*, 519 N.E.2d 295, 296 (N.Y. 1987)) (internal quotation marks omitted). "A party's duty to perform a contract will only be discharged if extraordinary circumstances, the non-occurrence of which was a basic assumption on which the contract was made, make performance so vitally different from what was reasonably to be expected as to alter the essential nature of that performance." *Dresser-Rand Co. v. Petroleós de Venezuela, S.A.*, 574 F. Supp. 3d 217, 223 (S.D.N.Y. 2021), *aff'd sub nom. Siemens Energy, Inc. v. Petroleós de Venezuela, S.A.*, 82 F.4th 144 (2d Cir. 2023) (internal quotations omitted); *see also Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 339 (2d Cir. 1986).

Such extraordinary circumstances include "'the destruction of the means of performance by act of God, *vis major*, or by law.'" *Ebert v. Holiday Inn*, 628 F. App'x 21, 23 (2d Cir. 2015) (quoting *407 E. 61st Garage, Inc. v. Savoy Fifth Ave. Corp.*, 23 N.Y.2d 275, 281 (1968)). Impossibility thus excuses a party's performance "when the destruction of . . . the means of performance makes performance objectively impossible." *Clarex*, 988 F. Supp. 2d at 394 (quoting *Kel Kim*, 519 N.E.2d at 296).

"The defendant has the burden to prove that its performance was 'objectively impossible.'" *Dresser-Rand*, 574 F. Supp. 3d at 223 (quoting *Inter-American Dev. Bank v. NextG Telecom Ltd.*, 503 F. Supp. 2d 687, 696 (S.D.N.Y. 2007)). PDVSA "must demonstrate that it took virtually every action within its powers to perform its duties under the contract." *Kama Rippa Music, Inc. v. Schekeryk*, 510 F.2d 837, 842 (2d Cir. 1975). While PDVSA need only raise a genuine issue of

material fact regarding its impossibility defense in order to avoid summary judgment on the Plaintiffs' motion, it must satisfy the higher initial burden held by movants for its own motion for summary judgment to succeed. *See Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994).

PDVSA argues it was impossible to perform under the Indenture because no bank would process payments made by PDVSA to the Principal Paying Agent. *See* ECF No. 141 at 1–2. As "[t]he Indenture provided for no other method of payment and contained no mechanism addressing such a situation . . . performance under the Indenture became impossible." ECF No. 141 at 2–3; *see id.* at 2 ("The Indenture required payment to the Agent, but the Agent could not receive the funds."); ECF No. 139-1 at 18 (Indenture).

PDVSA highlights the Agent's efforts to secure a new bank account to process the payments. *See* ECF Nos. 139-5–139-15 (emails communications among employees at the Agent and with representatives from over five banks). PDVSA additionally raises its ultimately unsuccessful efforts to bypass the Agent and make payments directly to the Depository Trust & Clearing Corporation ("DTCC"), the depository of the Notes and a non-party to the Indenture. *See* ECF No. 139-16 (email communications with US Bank); ECF No. 141 at 3.

Plaintiffs do not contest that these circumstances were unforeseeable nor that the banks in question denied the Agent's requests. *See generally* ECF No. 144. Instead, Plaintiffs argue that PDVSA cannot avail itself of an impossibility defense because: (1) PDVSA is precluded from establishing its impossibility defense by two prior S.D.N.Y. opinions and (2) those opinions and additional evidence establish that PDVSA was able to make payments on other notes during the relevant time period.

The Court will evaluate PDVSA's argument, and Plaintiffs' responses, considering whether PDVSA has satisfied its burden to defeat the Plaintiffs' motion and then whether PDVSA has met the higher burden on its own motion. The Court will start with whether PDVSA is precluded from asserting its impossibility defense.

### a. Collateral Estoppel Does Not Apply

Plaintiffs argue that PDVSA is collaterally estopped from relitigating its impossibility defense. For collateral estoppel to apply, four requirements must be met: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2012) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288–89 (2d Cir. 2002)) (alteration in original).

Plaintiffs cite two opinions from this District which involve factually similar situations and found PDVSA had failed to establish an impossibility defense. *See* ECF No. 144 at 1–2 (citing *Dresser-Rand Co. v. Petroleós de Venezuela, S.A.*, 574 F. Supp. 3d 217 (S.D.N.Y. 2021), *aff'd sub nom. Siemens Energy, Inc. v. Petroleós de Venezuela, S.A.*, 82 F.4th 144, 159 (2d Cir. 2023); *Red Tree Invs., LLC v. Petroleós de Venezuela, S.A.*, Nos. 19-cv-2519 (PKC), 19-cv-2523 (PKC), 2021 WL 6092462, at *1 (S.D.N.Y. Dec. 22, 2021), *aff'd*, 82 F.4th 161 (2d Cir. 2023)). In both cases, PDVSA argued that it was impossible to make payments of the plaintiffs' notes due to U.S. sanctions, but the courts found PDVSA could have contacted alternative banks or provided additional assurances in order to make the payments. *See Dresser-Rand*, 574 F. Supp. 3d at 226 ("The rejections of the transactions by Citibank and Deutsche Bank do not indicate that all banks in the business would have denied the payments on risk-adverse grounds."); *Red Tree*, 2021 WL

11

6092462, at \*6 ("The Court accepts that many or most banks would require clarity on sanctions before processing payments. But PDVSA has come forward with no evidence of the ways in which it endeavored to assure financial institutions that processing its payments was lawful.").

The only factor under the collateral estoppel analysis in dispute is whether the issue of PDVSA's impossibility defense in this case is identical to the defense it raised in the previous two cases. *See* ECF No. 148 at 19–20 (arguing that the facts involved in *Dresser-Rand* and *Red Tree* are distinct). "For two issues to be 'identical,' they must involve not only the same factual predicate, but also the same legal standard." *Stinnett v. Delta Air Lines, Inc.*, 803 F. App'x 505, 507 (2d Cir. 2020) (citing *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 154 (2015)).

The facts in this case are not identical to those in *Dresser-Rand* or *Red Tree*. First, the types of notes and lenders were different from those in this case. *See* ECF No. 148 at 19. Additionally, in *Dresser-Rand*, there were specific banks which agreed to process the payments, but PDVSA failed to pursue them as options. *See* 574 F. Supp. 3d at 226 ("Commerzbank or Novo Bank would have likely been successful alternatives"). And in *Red Tree*, PDVSA was eventually able to process payments through Deutsche Bank, even though the bank had initially declined to do so. *See* 2021 WL 6092462, at \*5 ("[D]efendants' claim of impossibility is fatally undermined by defendants' acknowledgement that only after pressure from GE, a top client of the bank, were the funds approved, resubmitted, and transferred." (internal quotation omitted)). Both of these factual scenarios diverge from the background in this case. Therefore, collateral estoppel does not preclude PDVSA from establishing its impossibility defense.

### b. Evidence of Successful Payments Raise an Issue of Material Fact

Even though *Dresser-Rand* and *Red Tree* are not preclusive, the Court must still consider whether PDVSA's identification of banks willing to process payments and successful payments in

those cases demonstrate that payment on the Plaintiffs' Notes was possible. Plaintiffs support this argument with another opinion from this District where the court found PDVSA had made payments up to 2019. *See* ECF No. 134 at 16 (citing *PDVSA v. MUFG Union Bank, N.A.*, 495 F. Supp. 3d 257, 260–61 (S.D.N.Y. 2020)). Additionally, Plaintiffs highlight testimony from their expert, Stephanie Rice, who stated PDVSA made ten to thirty payments per week through the Bank of Tokyo during the same time period. *See* ECF No. 134 at 20–21 (citing ECF No. 132 ¶¶ 52–58). Plaintiffs argue that all these statements taken together conclusively establish possibility.

PDVSA argues this is not persuasive because "an entity can perform some business in some manner," but that does not mean "performance under a contract can never be impossible." ECF No. 148 20. PDVSA contends that impossibility only relates to whether it was possible for it to pay the Agent, as required by the Indenture. Therefore, any arguments about payments under different contracts or with different types of notes are irrelevant to whether payment under the Indenture was possible. *See id.* ("The question of impossibility deals with whether performance under this contract—the Indenture—was impossible.").

The record regarding the Agent's outreach is more extensive in this case than the three others cited by Plaintiffs. Further, PDVSA argues the universe of eligible banks was more limited here than in the previous cases as the Indenture specifies deposits be made in New York City. *See* ECF No. 148 at 17 (citing Indenture § 2.08(a)). And, as established by a representative from the Agent, although some banks were willing to process payments, they did not comply with the DTCC's requirements. *See* ECF Nos. 139-15 at 1 (email communication stating "[DTCC] has informed us they only accept payments from banks that are members of the Federal Reserve; therefore, ItalBank and Banco de San Juan are not eligible"); 130-21 at 48 (deposition testimony of Thomas Musarra stating his recollection of the same).

PDVSA was not required to reach out to every single bank in order to avail itself of an impossibility defense. In fact, on PDVSA's appeal of *Dresser-Rand*, the Second Circuit found that in order to carry its burden to show that payment was impossible, "PDVSA was simply required to provide credible reasons for why payment to or through banks such as China CITIC, DMBL, J.P. Morgan, Commerzbank, and Novobank was impracticable." *Siemens Energy, Inc. v. Petroleos de Venezuela, S.A.*, 82 F.4th 144, 159 (2d Cir. 2023). Those banks were ones which had processed payments from PDVSA or agreed to do so, rendering "[i]t reasonable to conclude that . . . [the] banks' risk-related policies may not have prohibited PDVSA's payments." *Id.* at 158; *see also Dresser-Rand*, 574 F. Supp. 3d at 226 (providing more details on the banks). The Court interprets this to mean that, when examples of alternative options are raised in response to the defense of impossibility, a court must decide whether it would be reasonable to conclude performance was possible based on the alternatives and, if so, whether the defendant has provided credible reasons why performance still impossible. *See Siemens Energy*, 82 F.4th at 158–59.

This leaves the Court with a factual question, inappropriate to decide at this procedural stage: whether it would be reasonable to conclude payment was possible because of other payments established by the prior cases and Plaintiffs' expert. This inquiry will likely involve weighing how similar the type of notes, relationships of the contractual parties, and requirements of the depository institutions are; as to all of which the parties disagree. *See* ECF Nos. 148 at 22 ("[T]he circumstances surrounding these transactions were also markedly different than the circumstances surrounding the Notes."); 151 at 9 ("There is no reason…to believe that the 9% Notes would or should have been treated differently from any of the other eight PDVSA note obligations."). These are questions of fact, inappropriate for the Court to decide on a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *see also*

14

*Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005). Accordingly, the Court finds PDVSA has satisfied its burden to avoid summary judgment on Plaintiffs' breach of contract claim and denies the Plaintiffs' motion. The Court notes this factual question is equally relevant to PDVSA's motion for summary judgment on its impossibility defense, and, therefore, denies that motion as well.[3]

## CONCLUSION

For the foregoing reasons, the Court find that Plaintiffs have established the existence of a contract, that Defendant failed to perform, and damages as a matter of law. Because an issue of material fact remains as to Defendant's defense of impossibility, the Court **DENIES** both parties' motions for summary judgment. The Court **GRANTS** the parties' letter motion to seal. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 125, 126, and 135.

The parties shall file a joint pretrial order in accordance with the Court's Individual Rules on or before April 30, 2025.

**SO ORDERED.**

**Dated**:   **March 28, 2025**
          **New York, New York**

                                              **ANDREW L. CARTER, JR.**
                                              **United States District Judge**

---

[3] Regarding PDVSA's direct deposits to the DTCC, these too do not defeat impossibility as a matter of law given that payments were never actually made to the beneficial owners. *See* ECF No. 140 ¶ 128 ("PDVSA's payment attempts were frequently held up or declined by banks within the payment channel to DTCC's account or the accounts of its equivalents."). Likewise, PDVSA has certainly not shown that such payments were impossible, as it provides no reason why the payments were ultimately unsuccessful. *See id.*; ECF No. 141 at 25 ("[PDVSA's] attempt to pool funds at DTCC to pay noteholders was unsuccessful.").